IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRYAN J. STEINMETZ,

        Plaintiff,

vs.                                       No. CIV 08-0629 JB/WDS

SUSAN CAROL STEINMETZ, and
CHRISTINA MARIE BURNEY, and
STATE OF NEW MEXICO SECOND
JUDICIAL DISTRICT COURT, and
JUDGE ANGELA JEWELL, and
DOMESTIC VIOLENCE SPECIAL COMMISSIONER
ALISA HADFIELD, ATTORNEY GENERAL GARY
KING, and ASSISTANT ATTORNEY GENERAL ALBERT
LAMA, and DISTRICT ATTORNEY KARI BRANDENBURG,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on (i) Bryan J. Steinmetz' Complaint Seeking

Emergency Injunction, Emergency Preliminary Injunction and Emergency Temporary Restraining

Order, filed July 2, 2008 (Doc. 1); and (ii) the Motion to Dismiss of Defendants Second Judicial

District Court, the Honorable Angela Jewell, Alisa Hadfield, Gary King, and Albert Lama, filed July

22, 2008 (Doc. 11).  The Court held a hearing on July 24, 2008 on Plaintiff Bryan J. Steinmetz's

request for emergency injunctive relief.  The primary issue is whether the Court should issue an

order (i) enjoining New Mexico's Second Judicial District Court from enforcing four orders filed

in state-court domestic-violence proceedings; (ii) enjoining Mr. Steinmetz's wife, who is a party in

the domestic-violence proceeding, from denying him access to his daughters; (iii) staying the state-

court domestic-violence proceedings until such time as Mr. Steinmetz can be afforded due process

of law to allow for the proper defense of the state-court matter; (iv) ordering the state court to

transfer venue of the domestic-violence proceeding to another judicial district; (v) holding that the hearing officer in the state-court proceedings violated Mr. Steinmetz's due-process rights by not allowing him to present certain witnesses at a hearing; and/or (vi) ordering the state-court clerk to allow Mr. Steinmetz to file documents in the state-court suit or to otherwise give him access to the state-court record.  For reasons stated on the record at the hearing, and for further reasons consistent with those already stated, and because (i) Mr. Steinmetz has not made the heavy showing required to secure a preliminary injunction, (ii) the Court must abstain from interfering with on-going state-court judicial proceedings that involve important state interests and provide a forum in which Mr. Steinmetz may raise his constitutional claims, (iii) the Anti-Injunction Act also prohibits the Court from providing the majority of the relief Mr. Steinmetz requests; and (iv) the Court cannot issue procedural mandates to state-court officials, the Court will deny his request for emergency preliminary injunctive relief and dismiss his petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Steinmetz and his wife, Defendant Susan Carol Steinmetz, are residents of Bernalillo County, New Mexico, and are going through a divorce in New Mexico state court.  See Doc. 1 ¶ 1, at 1.  Mr. Steinmetz alleges that, on June 3, 2008, Ms. Steinmetz falsely accused him of abusing her and their two daughters in a separate domestic-violence action in state court.  See id. ¶ 1, at 2.  Mr. Steinmetz states that he filed a counter-petition alleging abuse against Ms. Steinmetz on June 5, 2008, but that Defendant Domestic Violence Special Commissioner, Alisa Hadfield, ignored his testimony, disregarded his evidence, and refused to allow him to call witnesses at a hearing on June 10, 2008.  See id. ¶ 4, at 2-3.

Mr. Steinmetz contends that Ms. Steinmetz has violated temporary restraining orders issued

against her.  See id. ¶¶ 1-3, at 1-2.  The state district-court judge, Defendant Judge Angela Jewel, has issued four orders: a Memorandum Order of Supervised Visitation, a Court Clinic Referral Order, an Order dismissing Mr. Steinmetz's Counter-petition, and an Order of Protection.  See Complaint at 3.  Mr. Steinmetz contends that he will suffer irreparable harm if these orders are not stayed because he has been forbidden to have contact with his daughters under the protective order and he cannot afford to pay money to the "Neutral Corner for supervised visitation."  Id. at 4.   In his Complaint, Mr. Steinmetz seeks an order (i) enjoining the Second Judicial District Court from enforcing its four orders, (ii) enjoining Ms. Steinmetz from denying him access to his daughters, and (iii) staying the state-court action "until such time as [Mr. Steinmetz] can be afforded due process to allow for a proper defense" of the state-court matter.  See id.  Mr. Steinmetz has also requested additional relief in subsequent documents and at two hearings on the matter.

On July 3, 2008, the Court held a hearing on Mr. Steinmetz's emergency motion for a temporary restraining order ("TRO") regarding a state-court hearing that he desired to be stayed but that was vacated by the state court before the federal court's hearing occurred.  The Court orally denied Mr. Steinmetz's request for a TRO and set a hearing on his request for a preliminary injunction for July 24, 2008.  On July 7, 2008, Mr. Steinmetz filed "supplemental" documents showing that Ms. Steinmetz had been picked up from their home for mental-health counseling three times by the Albuquerque Police in 2006 and 2007 during domestic disputes and that she had slapped his sister during one of those disputes.  Doc. 5.

On July 12, 2008, in a written order and short opinion, the Court formally denied Mr. Steinmetz' motion for a TRO.  See Order, filed July 12, 2008 (Doc. 7).  In the meantime, the State Defendants were served with the Complaint, and they immediately filed a motion to dismiss.  See

Clerk's Docket Entry dated July 21, 2008; Doc. 11.

At the July 24, 2008 hearing, Ms. Steinmetz and Defendant Christina Marie Burney both appeared pro se, and the Second Judicial District Court, the Honorable Angela Jewell, Alisa Hadfield, Gary King, and Albert Lama appeared through counsel.  Defendant Kari Brandenberg has not entered an appearance in this case.

Mr. Steinmetz contended at the July 24, 2008 hearing that he has "been denied due process . . . for the entire proceedings of the State Court.  I have filed at least one dozen different proceedings and notices, motions alleging violation and they've all fallen on deaf ears."  Transcript of Hearing at 7:8-12 (taken July 24, 2008)("Tr.").[1]  He contends that he "received a lot of static and interference and indifference with the domestic violence side in their clerk's reception area," and complains that the clerk's office is "not happy to see me there."  Id. at 8:2-4; id. at 8:6-7.  Mr. Steinmetz believes that the "clerks, the judge, the commissioner, there, [are] bias[ed against him] because [he is] pro se."  Id. at 8:14-15.   He complains that "the clerks and Commissioner Hatfield, they refuse to endorse my paperwork.  They refuse to accept it at the time that I file it, and then just state, 'well, we'll mail you the paperwork,' but then the paperwork, it never shows up."  Id. at 8:19-23.  Mr. Steinmetz admitted, however, that Judge Jewel recused herself from hearing the domestic-violence case upon his motion and that the state court also transferred his divorce case back to Judge Romero upon his request.  See id. at 9:3-14.

Mr. Steinmetz called two witnesses at the July 24, 2008 hearing to testify to what they would have said in the June 10, 2008 state-court hearing had Commissioner Hadfield allowed them to

---

[1]  The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

testify.  He first called his children's former babysitter and questioned her about events allegedly occurring in August 2007 regarding Ms. Steinmetz' behavior to establish Ms. Steinmetz' "motives." Id. at 15:15-20 (Mr. Steinmetz).  Mr. Steinmetz elicited testimony about Ms. Steinmetz allegedly causing his daughters to become hysterical, threatening them if they did not say what she wanted them to say, not properly feeding the children, keeping her kitchen a "filthy mess," threatening to beat up the babysitter and to take legal action against her, and asking the babysitter to help her "fix" Mr. Steinmetz three years earlier when the Steinmetzes had been fighting.  Id. at 15-19.   The babysitter testified that she was not allowed to be a witness in the June 10, 2008 state-court hearing because the incidents in August 2007 occurred more than six months before the hearing.  Id. at 26:16-23.

Mr. Steinmetz next called his sister as a witness.  She testified that, in May 2008, Ms. Steinmetz had become violent at the food-stamp office and hit herself in the head, causing her children to become hysterical, and stated that she "wanted every Steinmetz dead."  Id. at 31:1-2. The witness then testified that the reason she was not allowed to testify at the June 10, 2008 state-court hearing was because she was sick and arrived after the hearing officer had closed the evidentiary portion of the hearing and would not open it back up to allow her to testify.  See id. at 32:22-33:3.

As an alternative to staying the state-court proceedings or enjoining the state court from enforcing its orders, Mr. Steinmetz asked the Court to force a change of venue in the state-court action to one of the other state judicial districts.  See id. at 36:8-16.  Ms. Steinmetz stated that she wanted to fill out some paperwork for supervised visitation rights.  See id. at 36:22-25.

At the July 24th hearing, the State Defendants contended that injunctive relief should not be

granted for the reasons stated in their motion to dismiss, which they filed in lieu of an answer on July 22, 2008.  The Defendants' motion includes a request that the Court dismiss Mr. Steinmetz' Complaint under the Younger abstention doctrine.  See Doc. 11 at 3-4.

The Court orally noted at the end of the hearing that, under 28 U.S.C. § 2283, federal courts "may not grant injunctions to stay proceedings in a State Court except as is expressly authorized" by the statute, and that the Court has not "seen an exception to that statute" in this case.  July 24, 2008 Tr. at 38:17-23.  The Court also noted that Mr. Steinmetz has not "shown that the threatened injury to him of having this [state-court] case continue outweighs what harm [an injunction] may" cause the opposing party, and that, because "federal courts have very limited jurisdiction over domestic affairs and domestic judicial proceedings, [] the public interest is largely in leaving this to the State Courts."  Id. at 39:14-18.  The Court noted that, "if there are due process, constitutional problems in the proceedings, those can certainly be taken up on appeal [in the state court] or taken by writs to the [New Mexico] Supreme Court or the Court of Appeals and not [] to federal courts." Id. at 39:22-40:1.  The Court explained that it was "not sure that there are not adequate remedies that the State of New Mexico is not providing, even if I assume that the Second Judicial District is violating [] civil rights here.  There are appellate courts available to deal with many of those issues before the federal courts get involve[d]."   Id. at 40:1-6.  The Court further explained that "preliminary injunctions are primarily to keep the status quo and the request to move the case to another jurisdiction would certainly not be keeping the status quo but would be a mandatory injunction."  Id. at 40:9-13.  The Court orally ruled that it would deny the petition for injunctive relief and would issue a written ruling.  Id. at 40:23-25.

On August 4, 2008, Mr. Steinmetz filed a response to the State Defendants' Motion to

Dismiss.  See Doc. 16.  He contended that his Complaint "was simply an initiating document to stop all state action due to a litany of due process violations which occurred in and around June 10, 2008, through to, but not necessarily limited to June 22, 2008 . . ."  Id. at 2.  He contends that this Court has original jurisdiction over all "present and future constitutional and federal law claims."  Id.  He asserts that the state courts do not provide an adequate forum for his claims because the hearings previously set there were vacated, Judge Jewel and Hadfield both recused themselves from further hearing the domestic-violence case and the case was reassigned, and hearings were reset for September without allowing "knowledge, visitation, custody, and such of his children."  Id. at 4.  Mr. Steinmetz contends that he has "reserve[d] his federal right to file a follow-on and structured complaint that denotes the already occurred/identified violations of his civil rights" and King's, Lama's, and Brandenburg's "neglect to prevent said violations."  Id.  He requests that the Court "refrain from dismissing" his case until the state court (i) "demonstrates it can respectively honor the Plaintiff's right to due process," (ii) "the states' prosecuting officers prosecute those responsible for . . . criminal violations of the Plaintiff's civil rights," and (iii) Mr. Steinmetz determines whether it is necessary to "file[] a follow-on and structured civil rights complaint . . . ."  Id. at 5.

Mr. Steinmetz recently filed a "Supplemental Pleading to July 24, 2008 Hearing on Plaintiff's Complaint Seeking Emergency Preliminary Injunction."  Doc. 18, filed August 8, 2008. In this document, he alleges he has suffered further "instances of irreparable harm" since the July 24, 2008 hearing, including: (i) he learned on June 28, 2008 that Commissioner Hadfield intended still to hold a July 29, 2008 hearing despite the fact that Judge Jewell had recused herself from the case and he had sued Hadfield in this Court; (ii) an armed Sheriff's Deputy attended the July 29, 2008 proceeding and stated that he was there to protect Hadfield; and (iii) Hadfield orally recused

herself at the July 29th hearing from further hearing the domestic-violence issues because Mr. Steinmetz had sued her in federal court.  See Doc. 18 at 2-3.  Mr. Steinmetz contends that these actions were "merely a show of force and power intended as intimidation and retaliation for Plaintiff bringing suit in this United States District Court" and that Hadfield should have "recused herself on paper."  Id. at 4.  He further contends that the state-court clerk refused to file an emergency motion to dismiss the domestic-violence action on the grounds of double jeopardy on August 4, 2008, instead requiring him to leave the motion with the presiding judge's administrative assistant.  See id.  He contends that he "has been denied access to the  docket" in his domestic-violence case since July 25, 2008 and that the court's clerk has denied his requests for copies of documents in the record.  Id. at 4-5.  He states that he has been denied access to the records in both his domestic-violence case and his divorce case since July 25th, and that the court clerk states that the records are "checked out by court staff."  Id. at 6.  He contends that "all Defendants are pursuing charges against [him] in violation of the Double Jeopardy laws and requests this Court reconsider the new and exculpatory evidence in this case and act accordingly."  Id.

Mr. Steinmetz filed two additional "Notice[s] to Court" on August 21, 2008.[2]  See Docs. 19,

---

[2]  In the first Notice, Mr. Steinmetz accuses Ms. Steinmetz and Ms. Burney of fraud, because he discovered on August 14, 2008 that his medical doctor's office had changed Mr. Steinmetz' address to Ms. Burney's address.  See Doc. 19 at 1-2.  The receptionist told Mr. Steinmetz there was no way to tell who changed the address, or when or why it was changed.  See id. at 2.  Mr. Steinmetz speculates that Ms. Steinmetz must have intentionally changed his address by fraudulently telling the receptionist that she had the right to do so because Mr. Steinmetz' and his wife's medical records are separate.  See id.  These allegations are not relevant to Mr. Steinmetz' Complaint, and do not state a cause of action for conspiracy or fraud against either person.  Even if they stated new causes of action, the Court would not permit Mr. Steinmetz to amend his Complaint requesting injunctive relief to attempt to state a state-law cause of action for conspiracy or fraud when the Court does not have diversity jurisdiction over the parties and Steinmetz has not stated a federal cause of action in his Complaint.

20.  In the second Notice, he states that the clerks in the Second Judicial District Court finally allowed him to file his emergency Motion to Dismiss on August 8, 2008, but that the clerks continued to deny him access to the court files in his two cases.  See Doc. 20 at 2.

### LAW REGARDING PRELIMINARY INJUNCTIONS

"'A preliminary injunction is an extraordinary remedy, and thus the right to relief must be clear and unequivocal.'"  Nova Health Sys. v. Edmonton, 460 F.3d 1295, 1298 (10th Cir 2006)(quoting Schrier v. Univ. of Colo., 427 F. 3d 1253, 1258 (10th Cir. 2005))(brackets omitted).  To show that the extreme remedy of a preliminary injunction should issue, "[a] party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law."  N. Cal. Power Agency v. Grace Geothermal Corp., 469 U.S. 1306, 1306 (1984).

The Supreme Court and the Tenth Circuit have explained that "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981).  See Keirnan v. Utah Transit Auth., 339 F.3d 1217, 1220 (10th Cir. 2003)("'In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits.'")(quoting Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986)).

To establish its right to a preliminary injunction, a moving party must demonstrate: "'(1) the movant will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood the movant ultimately will prevail on the merits; (3) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest.'"  Wyandette Nat'l v. Sebelius, 443 F.3d 1247, 1254-55 (10th Cir.

2006)(quoting <u>Kiowa Indian Tribe of Okla. v. Hoover</u>, 150 F.3d 1163,1171 (10th Cir. 1998)).   If the moving party demonstrates that the first, third, and fourth factors "tip strongly in his favor, the test is modified," and the moving party "may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue for litigation and deserving of more deliberate investigation." <u>Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.</u>, 455 F.3d 1107, 1113 (10th Cir. 2006)(quotation marks omitted).   There are, however,

> three types of specifically disfavored preliminary injunctions [for which] a movant must satisfy an even heavier burden of showing that the four [preliminary injunction] factors . . . weigh heavily and compellingly in movant's favor before such an injunction may be issued: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.

<u>O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft</u>, 389 F.3d 973, 975 (10th Cir. 2004) (en banc), <u>aff'd</u>, 546 U.S. 418 (2006)(internal quotation marks omitted).   Courts in the Tenth Circuit "must recognize that any preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." <u>Id.</u>   "[M]ovants seeking such an injunction are not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard.   Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms . . . ." <u>Id.</u> at 976.

## LAW REGARDING MANDATORY ABSTENTION

> Under the abstention doctrine articulated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), "federal courts should not 'interfere with state court proceedings' by granting equitable relief -- such as injunctions of important state proceedings or declaratory judgments regarding

-10-

constitutional issues in those proceedings" when the state forum provides an adequate avenue for relief. *Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 875 (10th Cir. 2001) (quoting *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir.1999)). This refusal to exercise federal jurisdiction arises from a desire to "avoid undue interference with states' conduct of their own affairs." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999) (quoting *Seneca-Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 711 (10th Cir.1989)).

For *Younger* abstention to be appropriate, three elements must be present: (1) interference with an ongoing state judicial proceeding; (2) involvement of important state interests; and (3) an adequate opportunity afforded in the state court proceedings to raise the federal claims. *Valdez*, 186 F.3d at 1291 (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)).

Sw. Air Ambulance, Inc. v. City of Las Cruces, 268 F.3d 1162, 1177-78 (10th Cir. 2001). When all of the elements mandating abstention clearly exist in the record, courts may, and should, address application of the Younger abstention doctrine *sua sponte*. See Bellotti v. Baird, 428 U.S. 132, 143 n. 10 (1976)(stating that "abstention may be raised by the court *sua sponte*"); Crown Point I, LLC v. Intermountain Rural Elec. Ass'n, 319 F.3d 1211, 1214 (10th Cir. 2003)(noting that "[t]he applicability of *Younger* abstention was not raised by the parties below. However, the issue arose after a motions panel of this circuit determined, *sua sponte*, that the District Court was required to abstain from granting the plaintiff's request for injunctive relief based on the principles articulated in *Younger v. Harris*"); Morrow v. Winslow, 94 F.3d 1386, 1390-91 & n.3 (10th Cir. 1996)(raising and applying Younger abstention doctrine *sua sponte*, holding that parties need not raise the Younger abstention doctrine to preserve its applicability, and reversing and remanding for entry of an order of dismissal because the district court failed to *sua sponte* apply the doctrine). "*Younger* abstention is not discretionary once the [three] conditions are met, absent extraordinary circumstances that render a state court unable to give state litigants a full and fair hearing on their federal claims." Seneca-Cayuga Tribe v. Oklahoma, 874 F.2d 709, 711 (10th Cir. 1989)(citation

omitted).  See Taylor v. Jaquez. 126 F.3d 1294, 1296 (10th Cir. 1997) (holding that, because "'application of the Younger doctrine is absolute . . . when a case meets the Younger criteria,' there is no discretion for the district court to exercise").  The United States Court of Appeals for the Tenth Circuit has thus held that, when a case is controlled by Younger abstention principles, and "the circumstances . . .  counsel abstention," the district court must "abstain and [] dismiss [the federal plaintiff's] case without prejudice."  Morrow v. Winslow, 94 F.3d at 1398 (determining *sua sponte* that abstention and dismissal were required, vacating the district court's judgment that denied injunctive and declaratory relief on the merits, and remanding for issuance of an order of dismissal).  See Younger v. Harris, 401 U.S. at 43 (holding that the federal courts must dismiss suits requesting declaratory or injunctive relief when there are pending state criminal proceedings); Chapman v. Oklahoma, 472 F.3d 747, 750 (10th Cir. 2006)(affirming dismissal of federal case because its consideration was barred by Younger abstention principles, but remanding for district court to enter order reflecting dismissal without prejudice instead of dismissal with prejudice).

## LAW REGARDING THE ANTI-INJUNCTION ACT

"The Anti-Injunction Act ["(AIA)"] provides that a federal court 'may not grant an injunction to stay proceedings in a State court' except in three circumstances: 'as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'  28 U.S.C. § 2283."  Weyerhaeuser Co. v. Wyatt, 505 F.3d 1104, 1107 (10th Cir. 2007).

> [T]he Supreme Court . . . explained the purpose of the AIA.  The law "is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts."  [Chick Kam Choo v. Exxon Corp., 486 U.S. 140] at 146, 108 S. Ct. 1684.  By prohibiting "frequent federal court intervention" in state court proceedings, the AIA "forestalls . . . 'friction between the state and federal courts.' " *Id.* (quoting *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S.

-12-

623, 630-31, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977)).

Id. at 1108. "[T]he [Anti-Injunction] Act is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act." Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 630 (1977). "[A]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." Id. (internal quotation marks omitted).

The AIA applies to prohibit a federal court from enjoining the court or a party in a state-court proceeding from prosecuting the suit, complying with, or enforcing state-court orders. "It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding." Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 287 (1970). "Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately to the [Supreme] Court [of the United States]." Id. And the Supreme Court has long held that the term "proceedings" in state court

> is comprehensive. It includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process. It applies to appellate as well as to original proceedings; and is independent of the doctrine of res judicata. It applies alike to actions by the court and by its ministerial officers; applies not only to an execution issued on a judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective. The prohibition is applicable whether such supplementary or ancillary proceeding is taken in the court which rendered the judgment or in some other. And it governs a privy to the state court proceeding . . . as well as the parties of record. Thus, the prohibition applies whatever the nature of the proceeding, unless the case presents facts which bring it within one of the recognized exceptions [to the AIA].

Hill v. Martin, 296 U.S. 393, 403 (1935)(footnotes omitted).

## LAW REGARDING MANDAMUS RELIEF

28 U.S.C. § 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." "Mandamus is the traditional writ designed to compel government officers to perform nondiscretionary duties." Simmat v. United States Bureau of Prisons, 413 F.3d 1225, 1234 (10th Cir. 2005). But "[n]o relief against state officials or state agencies is afforded by § 1361." Amisub (PSL), Inc. v. Colo. Dep't of Soc. Servs., 879 F.2d 789, 790 (10th Cir. 1989); Stevens v. Sheriff of El Paso County, Colo., No. 00-1451, 15 Fed. Appx. 740, 742 (10th Cir. 2001)(holding that "a federal district court is without jurisdiction under section 1361 to compel state officials to perform any duty owed to a plaintiff under state law").

## ANALYSIS

Mr. Steinmetz has not established entitlement to injunctive relief. Moreover, the Court must abstain from further entertaining this action because it has become clear that all of the elements of mandatory Younger abstention are present. Furthermore, the Court cannot grant most of the relief Mr. Steinmetz requests because it is prohibited from doing so under the Anti-Injunction Act. Finally, the Court does not have jurisdiction to mandate that the clerks in the state courts perform their ministerial duties.

## I.      THE REQUIREMENTS FOR INJUNCTIVE RELIEF HAVE NOT BEEN MET.

The relief Mr. Steinmetz requests seeks to change the status quo of the parties -- that is, he seeks to avoid hearings and overturn or enjoin orders in a case in state court that is already proceeding. His petition is disfavored. Accordingly, he must make a strong showing that he is likely to succeed on the merits and that the threatened injury to him outweighs any harm to the

adverse parties.  See O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft, 389 F.3d at 976.

But even if his petition is not disfavored, and even if he does not have to make a strong showing,

Mr. Steinmetz cannot make the showing needed to secure injunctive relief from this Court.

**A.    MR. STEINMETZ HAS NOT SHOWN THAT HE WILL SUFFER IRREPARABLE HARM UNLESS THE INJUNCTION ISSUES**.

Although it is almost always damaging in some respect for parents to be unable to see their

children, restrictions for limited periods while a court sorts out allegations of abuse, sets a full-blown

trial on visitation and custody matters, and enters rulings are unlikely to cause irreparable harm.

Further, Mr. Steinmetz bears some responsibility for the delays in obtaining visitation and/or

custody rights by demanding recusals and reassignment of the domestic-violence case; by not

ensuring the timely appearance of one of his witnesses at the June 10, 2008 hearing or requesting

a continuance of that hearing; and by failing to take advantage of the ordered supervised visitation

or requesting a waiver of the supervision fees due to his alleged indigency.   Suing the

Commissioner in federal court further delayed the July 29, 2008 hearing that may have resulted in

a favorable result regarding visitation had Mr. Steinmetz presented the evidence that he has

presented to this Court.

**B.    MR STEINMETZ HAS NOT SHOWN A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS**.

Because this Court has decided to abstain, there is no federal action in this Court on which

Steinmetz is likely to succeed on the merits.  The Court cannot, of course, predict how the state-

court case will turn out, because nothing filed in that case, except for documents Steinmetz filed,

are in the record.  Under Younger and Morrow v. Winslow, it is unlikely that Mr. Steinmetz can

secure any relief in this Court because a request for injunctive relief under these circumstances is

not only unlikely to succeed; it is prohibited.  The Court must dismiss the Complaint that requests the relief.

The Court lacks subject-matter jurisdiction over Mr. Steinmetz' claims.  There is also substantial doubt whether Mr. Steinmetz has stated, or can state, a federal cause of action against the State Defendants because of absolute judicial or prosecutorial immunity. Mr. Steinmetz concedes in his response to the motion to dismiss that this Complaint is solely for injunctive relief and that he has not attempted to state a cause of action against anyone otherwise, but wants to "reserve his rights" to do so.  In any case, federal courts must abstain from interfering in state-court proceedings when there are important state interests at stake, and the parties have an opportunity to raise issues regarding alleged constitutional violations in those proceedings.

### C.   MR. STEINMETZ HAS NOT SHOWN THAT THE THREATENED INJURY TO HIMSELF OUTWEIGHS ANY HARM THE PROPOSED INJUNCTION MAY CAUSE THE OPPOSING PARTIES.

Mr. Steinmetz has not shown that it would be more equitable or not harmful to deprive his wife of the protective orders she has obtained in the state-court proceedings or to further delay the domestic-violence proceedings.  Despite Mr. Steinmetz' assertions that his wife is either mentally disturbed or lying, the issue whether he abused his daughters remains to be determined by a court of competent jurisdiction.  That court is the state district court.

### D.   MR. STEINMETZ HAS NOT SHOWN THAT THE INJUNCTION WOULD NOT BE CONTRARY TO THE PUBLIC INTEREST.

Mr. Steinmetz seeks to have the federal courts interfere in ongoing domestic relations proceedings and child visitation and custody issues.  As noted, however,

> [t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States. . . . Thus, while rare instances arise in which it is necessary to answer a substantial federal

-16-

> question that transcends or exists apart from the family law issue, in general it is
> appropriate for the federal courts to leave delicate issues of domestic relations to the
> state courts.

Elk Grove Unified School Dist. v. Newdow, 542 U.S. at 12-13 (internal quotation marks and

citations omitted).  See Hunt v. Lamb, 427 F.3d 725, 727 (10th Cir. 2005).  Because federal courts

have not been granted jurisdiction over state-law domestic-relations matters and in fact are

precluded from intervening in such proceedings, it is contrary to public policy for a federal court to

intervene in those matters by granting injunctive relief.

## II.   THIS COURT MUST ABSTAIN FROM HEARING THIS CASE.

Mr. Steinmetz' Complaint seeks this Court's interference with ongoing state-court domestic-

violence and child-custody proceedings and with enforcement of existing state-court orders in those

proceedings.  It became clear at the July 24, 2008 hearing that Mr. Steinmetz is seeking an order

holding that the hearing officer in the state-court proceedings violated Mr. Steinmetz' due-process

rights by not allowing him to present certain witnesses at the June 10, 2008 hearing.  His subsequent

filings demonstrate that he also seeks an order declaring that the filing of the second complaint for

domestic violence violates his right against double jeopardy.  Because Mr. Steinmetz' Complaint

involves state-court procedural matters and seeks the overturning of orders still pending in state

court, the Court must dismiss the Complaint under the Younger abstention doctrine.  See Sw. Air

Ambulance, Inc. v. City of Las Cruces, 268 F.3d at 1177-78.  The Defendants have urged abstention

and the record demonstrates that all three of the Younger v. Harris elements are satisfied.

First, Mr. Steinmetz acknowledges that the state-court domestic violence, divorce, and

custody proceedings remain ongoing in the New Mexico state courts and that hearings are scheduled

in September.  His domestic-violence and child custody proceedings implicate important state

interests.  In Elk Grove Unified School District v. Newdow, 542 U.S. 1 (2004) the Supreme Court noted that,

> [t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States, . . . [W]hile rare instances arise in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue, in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts.

Id. at 12-13 (internal quotation marks and citations omitted).  See  Hunt v. Lamb, 427 F.3d at 727 ("It is well-established that federal courts lack jurisdiction over the whole subject of the domestic relations of husband and wife, and parent and child.")(quotation marks and bracket omitted).  Further, the New Mexico state-court proceedings offer Mr. Steinmetz an adequate opportunity to litigate any federal constitutional issues that may arise.  See Wideman v. Colorado, 242 Fed. Appx. 611, 2007 WL 2827736 (10th Cir. Oct. 1, 2007)(affirming, in part under Younger v. Harris, dismissal of a complaint alleging that constitutional rights were violated during custody proceedings, seeking order restoring parental rights, and directing that all child support payments be returned), cert. denied, 128 S.Ct. 1740 (2008).  Mr. Steinmetz may raise objections to the hearing officer's negative procedural ruling to the state district court and may appeal subsequent negative rulings, if any, to the state appellate courts.  Because the three Younger requirements are met, and there are no "extraordinary circumstances that render a state court unable to give [Mr. Steinmetz] a full and fair hearing on [his] federal claims," Seneca-Cayuga Tribe v. Oklahoma, 874 F.2d at 711, the Court must dismiss Mr. Steinmetz' Complaint without prejudice, see Chapman v. Oklahoma, 472 F.3d at 750; Taylor v. Jaquez. 126 F.3d at 1296; Morrow v. Winslow, 94 F.3d at 1389.

-18-

III.   **THE COURT CANNOT OTHERWISE STAY OR ENJOIN THE STATE-COURT PROCEEDINGS UNDER THE ANTI-INJUNCTION ACT.**

Mr. Steinmetz requests that the Court (i) enjoin the Second Judicial District Court from enforcing its four orders filed in state-court domestic-violence proceedings, (ii) enjoin Mr. Steinmetz' wife from denying him access to his daughters as provided in the order of protection, and (iii) stay the state-court domestic-violence proceedings.  The Anti-Injunction Act prohibits such action, and Mr. Steinmetz has pointed to no exceptions to application of that absolute prohibition. See 28 U.S.C. § 2283; Weyerhaeuser Co. v. Wyatt, 505 F.3d at 1107.  Until a New Mexico state appellate court overturns the state district-court's orders, that court may enforce its orders and the parties may rely upon them.  See Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. at 287.  Mr. Steinmetz' remedy is to appeal the orders that he contends are unconstitutional to the state appellate courts.

IV.   **THIS COURT HAS NO JURISDICTION TO MANDATE STATE OFFICERS TO PERFORM DUTIES.**

Neither the state-court clerks nor the state-court judge are federal officials.  The Court, therefore, does not have jurisdiction to order the state-court judge to transfer venue of the domestic-violence proceeding to another judicial district, to order the state-court clerks to allow Mr. Steinmetz to file documents in the state-court suit, or to otherwise give him access to the state-court record. See Amisub (PSL), Inc. v. Colo. Dep't of Soc. Servs., 879 F.2d at 790; Stevens v. Sheriff of El Paso County, Colo., 15 Fed. Appx. at 742.  Mr. Steinmetz' remedy is to move for a transfer of venue in state court and to appeal from any adverse ruling to the state appellate courts, and/or to seek a writ of mandamus from the Supreme Court of New Mexico, which has mandamus authority over its judicial officers.

**IT IS ORDERED** that the request for emergency preliminary injunction in the Plaintiff's Complaint Seeking Emergency Injunction, Emergency Preliminary Injunction, and Emergency Temporary Restraining Order is denied, the Motion to Dismiss of Defendants Second Judicial District Court, the Honorable Angela Jewell, Alisa Hadfield, Gary King, and Albert Lama is granted, and the Plaintiff's Complaint and case is dismissed without prejudice under the <u>Younger</u> abstention doctrine.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and Parties:*

Bryan J. Steinmetz
Albuquerque, New Mexico

    *Pro Se Plaintiff*

Susan Carol Steinmetz
Albuquerque, New Mexico

    *Pro Se Defendant*

Christina Marie Burney
Albuquerque, New Mexico

    *Pro Se Defendant*

Gary K. King
  New Mexico Attorney General
Scott Fuqua
  Assistant Attorney General
New Mexico Attorney General's Office
Santa Fe, New Mexico

      *Attorneys for Defendants Second Judicial District Court,*
      *the Honorable Angela Jewell, Alisa Hadfield,*
      *Gary King, and Albert Lama*